UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BRIAN KNIFFEN,<br><br>                 Plaintiff,<br><br>   v.<br><br>EAST WENATCHEE WATER<br>DISTRICT,<br><br>               Defendant. | NO. 2:23-CV-0344-TOR<br><br>ORDER GRANTING IN PART<br>DEFENDANT'S MOTIONS FOR<br>SUMMARY JUDGMENT AND TO<br>EXCLUDE PLAINTIFF'S EXPERT<br>WITNESS |

BEFORE THE COURT are Defendant's Motion for Summary Judgment (ECF No. 34), and Motion to Exclude Plaintiff's Expert Witness (ECF No. 38). These matters were submitted for consideration without oral argument. The Court has reviewed the record and files herein and is fully informed. For the reasons discussed below, Defendant's Motion for Summary Judgment (ECF No. 34) is GRANTED in part, and Motion to Exclude Plaintiff's Expert Witness (ECF No. 38) is GRANTED in part.

ORDER GRANTING IN PART DEFENDANT'S MOTIONS FOR
SUMMARY JUDGMENT AND TO EXCLUDE PLAINTIFF'S EXPERT
WITNESS ~ 1

**BACKGROUND**

This matter arises out of alleged workplace discrimination and retaliation. Plaintiff worked for Defendant from January 1993 until November 2021. ECF No. 35 at 1, ¶ 1. From 2014 until his separation in 2021, Plaintiff was a Utility Field Inspector ("UFI"), and his job consisted, at least in part, of inspecting various entities served by the water district, which involved opening and closing water valves. ECF No. 35 at 2, ¶ 4; ECF No. 46 at 1, ¶ 2. In May 2019, Plaintiff experienced an on-the-job injury to his back while torquing a valve. ECF No. 46 at 2, ¶ 5. After the injury, Plaintiff was restricted with respect to lifting, squatting, and crawling. ECF No. 35 at 2, ¶ 6. In August of 2019, he underwent an extraforaminal discectomy, a procedure on his lower back, and continued to work on a light duty basis, including the assistance of another employee to turn valves. *Id.*, ¶¶ 7, 8. In June of 2020, Plaintiff called for assistance with a water valve, but no one was available, and he reinjured his back while twisting. ECF No. 46 at 2, ¶ 6. As a result, he reopened his original worker's compensation claim from May 2019. ECF No. 35 at 2, ¶ 9. The parties disagree as to whether Plaintiff's supervisor, Vince Johnston, told Plaintiff that he "didn't like" what Plaintiff wrote in his accident report on the incident. ECF No. 46 at 2, ¶ 7; ECF No. 50 at 5, ¶ 7.

The parties also disagree regarding the characterization of Defendant's workers compensation program. Defendant is a member of the Washington

ORDER GRANTING IN PART DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND TO EXCLUDE PLAINTIFF'S EXPERT WITNESS ~ 2

Association of Sewer & Water District ("WASWD"), a pool of other water and sewer districts in Washington which provides cost saving and reimbursements related to workers' compensation. ECF No. 46 at 2–3, ¶ 9. Plaintiff maintains that members of WASWD may be "pushed out," of the program when they have two out of four years with losses in excess of the premiums. *Id*. at 3, ¶ 10. Johnston was concerned that Plaintiff's injury compensation claims could remove Defendant from the insurance pool, as it had losses in excess of the premium in 2020 and 2021. *Id*., ¶ 12. Additionally, Defendant experienced an increase in its workers' compensation plan and did not receive a refund from WASWD in 2020 and 2021, which would indicate that there were no savings left over from the fund after medical costs. *Id*., ¶ 13, 14. Plaintiff states that Johnston was stressed about the prospect of losing coverage from WASWD, and took out his frustration on him, making comments such as "we're getting threatened to get kicked out of the insurance pool because you get hurt so much." *Id*. at 3–4, ¶¶ 15–17.

Defendant views its use of WASWD differently. It argues that, while membership provided a benefit to employees because it decreased their premiums, it would have continued to receive workers' compensation coverage in the event it was removed from the pool. ECF No. 50 at 2, ¶¶ 2, 4. Defendant as an entity did not take on the cost of membership, instead, the employees supplemented membership through their premiums. *Id*., ¶ 4. Moreover, Defendant never

ORDER GRANTING IN PART DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND TO EXCLUDE PLAINTIFF'S EXPERT WITNESS ~ 3

1    materially relied on the reimbursement from WASWD.  *Id.*, ¶ 3.

2        After the June 2020 injury, Plaintiff underwent an MRI which uncovered

3    some degenerative disc changes, including a small bulge at L5-S1.  ECF No. 35 at

4    2, ¶ 10.  He received an epidural steroid injection in May 2021.  *Id.*  Plaintiff's

5    treatment provider, PA-C David Hyde restricted him from lifting more than 50

6    pounds and from engaging in twisting motions, though the parties dispute if this

7    occurred before or after the steroid injection.  ECF No. 35 at 3, ¶ 11; ECF No. 46

8    at 18, ¶ 11.  An independent medical examination was performed in August 2021,

9    finding that Plaintiff had no restrictions, and his 2020 injury was unrelated to his

10   2019 injury.  ECF No. 35 at 3, ¶ 12.  Additionally, Plaintiff has required two knee

11   surgeries, for which he was released from work restriction in April 2021.  ECF No.

12   46 at 4, ¶ 20.

13       Sometime in the summer of 2021, Water District employee Alex Scott was

14   designated as Plaintiff's helper to assist with lifting and twisting valves on and off.

15   *Id.* at 7, ¶ 36.  Prior to Scott's formal designation, Defendant had been providing

16   Plaintiff with assistance for a year and a half.  *Id.*, ¶ 37.  Scott testified during

17   "busy season," running from March through November, he was helping Plaintiff

18   nearly daily, though Plaintiff disputes this and argues that he only called Scott 30

19   times total, and only half of those calls were to assist in turning valves.  ECF No.

20   48-4 at 4; ECF No. 46 at 8, ¶ 42.

ORDER GRANTING IN PART DEFENDANT'S MOTIONS FOR
SUMMARY JUDGMENT AND TO EXCLUDE PLAINTIFF'S EXPERT
WITNESS ~ 4

1    In September of 2021, PA-C Hyde again permanently restricted Plaintiff

2   from lifting more than 50 pounds and from opening or closing gate or butterfly

3   valves without the use of an assistive device.  ECF No. 35 at 2, ¶ 13.  P-AC Hyde

4   also recommended a truck-mounted valve exerciser as an accommodation to assist

5   Plaintiff.  *Id.*, ¶ 19.  The model contemplated by Plaintiff sat in a truck bed, and

6   Defendant estimated it would cost in total $80,000, including the exerciser, the

7   mounting equipment, and a dedicated truck.  *Id.*, ¶¶ 20, 21.  Defendant considered

8   these costs, coupled with the assessment that a truck could not enter many of the

9   sites Plaintiff accessed in the field, as too burdensome to undertake.  *Id.* at 4–5, ¶¶

10  21, 22, 24.  Moreover, Defendant argues that it possessed a handheld valve

11  exerciser that Plaintiff could have utilized while keeping within his restrictions, as

12  the equipment weighed 39 pounds.  *Id.*, ¶ 23.  Plaintiff disputes this

13  characterization, arguing that the total cost of the valve turner was somewhere

14  between $20,199 and $21,199, and that the equipment could be removed if the

15  truck needed maintenance.  ECF No. 46 at 20, ¶ 21.  Additionally, Plaintiff argues

16  that the truck mounted valve turner could be used in difficult to access areas, like

17  construction sites, and Defendant had assumed without verifying that most of the

18  valves were inaccessible via truck.  *Id.*, ¶ 22.  And Plaintiff argues that the

19  handheld valve turner was not an option for him given the torque used by the

20  device.  *Id.* at 20–21, ¶ 23.

ORDER GRANTING IN PART DEFENDANT'S MOTIONS FOR
SUMMARY JUDGMENT AND TO EXCLUDE PLAINTIFF'S EXPERT
WITNESS ~ 5

Defendant also determined that Plaintiff's need for help on a permanent basis was untenable, as requiring another employee to work effectively as his assistant took time away from the helper employee's assignment and would require Defendants to pay two people for a job typically done by one person. ECF No. 35 at 5, ¶ 25. Plaintiff disputes Defendant's description of the accommodation, arguing that it was common practice for everyone to ask for help, and that a possible modification to his job description could include permanent assistance from another employee. ECF No. 46 at 22.

Johnston made the decision to terminate Plaintiff on November 8, 2021. ECF No. 35 at 5–6, ¶¶ 27, 28. The day after Plaintiff was terminated, Defendant posted a job for a pump technician and safety officer, but Plaintiff was ineligible as it was designated for a union member first pursuant to the collective bargaining agreement, and was ultimately awarded to union member Matthew Coe. ECF No. 50 at 2, ¶ 5. Plaintiff's job was filled by his helper Alex Scott, who had no workplace restrictions. ECF No. 46 at 15, ¶ 90.

Plaintiff filed the present matter in November 2023, claiming wrongful discharge in violation of public policy, failure to accommodate, and disparate treatment in violation of the Washington Law Against Discrimination and the Americans with Disabilities Act. ECF No. 1. Defendant moves for summary judgment on all claims, arguing that it lawfully discharged Plaintiff because it was

ORDER GRANTING IN PART DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND TO EXCLUDE PLAINTIFF'S EXPERT WITNESS ~ 6

1    unable to accommodate him on a permanent basis.  ECF No. 34.  Additionally,

2    Defendant seeks to exclude Plaintiff's expert witness, Allison West, and her

3    opinion on its human resources practices.  ECF No. 38.  The Court considers each

4    in turn.

5                                        **DISCUSSION**

6    **I.      Summary Judgment Standard**

7            The Court may grant summary judgment in favor of a moving party who

8    demonstrates "that there is no genuine dispute as to any material fact and that the

9    movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In ruling

10   on a motion for summary judgment, the court must only consider admissible

11   evidence.  *Orr v. Bank of America*, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002).

12   The party moving for summary judgment bears the initial burden of showing the

13   absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S.

14   317, 323 (1986).  The burden then shifts to the non-moving party to identify

15   specific facts showing there is a genuine issue of material fact.  *See Anderson v.*

16   *Liberty Lobby, Inc*., 477 U.S. 242, 256 (1986).  "The mere existence of a scintilla

17   of evidence in support of the plaintiff's position will be insufficient; there must be

18   evidence on which the jury could reasonably find for the plaintiff."  *Id*. at 252.

19           For purposes of summary judgment, a fact is "material" if it might affect the

20   outcome of the suit under the governing law.  *Id*. at 248.  Further, a dispute is

ORDER GRANTING IN PART DEFENDANT'S MOTIONS FOR
SUMMARY JUDGMENT AND TO EXCLUDE PLAINTIFF'S EXPERT
WITNESS ~ 7

1    "genuine" only where the evidence is such that a reasonable jury could find in

2    favor of the non-moving party. *Id.* The Court views the facts, and all rational

3    inferences therefrom, in the light most favorable to the non-moving party. *Scott v.*

4    *Harris*, 550 U.S. 372, 378 (2007). Summary judgment will thus be granted

5    "against a party who fails to make a showing sufficient to establish the existence of

6    an element essential to that party's case, and on which that party will bear the

7    burden of proof at trial." *Celotex*, 477 U.S. at 322.

8    **II.    Wrongful Termination in Violation of Public Policy**

9        Plaintiff argues that Defendant had incentive to terminate his employment

10   based on the stress his workers' compensation claims placed on the Water

11   District's coverage. ECF No. 45 at 6–7.

12       The tort of Wrongful Discharge in Violation of Public Policy is narrowly

13   construed and is generally applied to only four scenarios: "(1) where employees

14   are fired for refusing to commit an illegal act; (2) where employees are fired for

15   performing a public duty or obligation, such as serving jury duty; (3) where

16   employees are fired for exercising a legal right or privilege, such as filing workers'

17   compensation claims; and (4) where employees are fired in retaliation for reporting

18   employer misconduct, i.e., whistleblowing." *Rose v. Anderson Hay and Grain Co.*,

19   184 Wash. 2d 268, 276 (2015). When a wrongful discharge claim does not clearly

20   fit into one of these categories, the court must instead consider the following

ORDER GRANTING IN PART DEFENDANT'S MOTIONS FOR
SUMMARY JUDGMENT AND TO EXCLUDE PLAINTIFF'S EXPERT
WITNESS ~ 8

1   "Perritt framework" to determine whether the claimant was wrongfully discharged

2   in violation of public policy: (1) the existence of a clear public policy; (2) that

3   discouraging the conduct in which the plaintiff engaged would jeopardize the

4   public policy; (3) that the public policy-linked conduct caused the dismissal; and

5   (4) that the defendant has not offered an overriding justification for the dismissal of

6   the plaintiff. *Gardner v. Loomis Armored Inc*., 128 Wash. 2d 931, 941 (1996).

7   Because Plaintiff has alleged he was terminated, in part, for engaging in a

8   protected activity, filing workers' compensation claims for the injuries he sustained

9   on the job, the Perritt framework is inapplicable.  ECF No. 1 at 19, ¶ 6.2.

10          When a case does not invoke the Perritt framework, a claim for wrongful

11   discharge in violation of public policy is analyzed under the following burden-

12   shifting framework: (1) the plaintiff has the burden to prove his or her "discharge

13   may have been motivated by reasons that contravene a clear mandate of public

14   policy;" (2) the plaintiff must show that the public-policy-linked conduct was a

15   "significant factor" in the decision to discharge the plaintiff; (3) the burden then

16   shifts to the employer to "articulate a legitimate nonpretextual nonretaliatory

17   reason for the discharge;" and (4) the burden shifts back to the plaintiff to either

18   show "that the reason is pretextual, or by showing that although the employer's

19   stated reason is legitimate, the [public-policy-linked conduct] was nevertheless a

20   substantial factor motivating the employer to discharge the worker." *Martin v.*

ORDER GRANTING IN PART DEFENDANT'S MOTIONS FOR
SUMMARY JUDGMENT AND TO EXCLUDE PLAINTIFF'S EXPERT
WITNESS ~ 9

1    *Gonzaga Univ.*, 191 Wash. 2d 712, 726 (2018).

2        Plaintiff argues that direct evidence, such as Johnston's statement telling him

3    that the District was being "threatened to get kicked out of the insurance pool

4    because [Plaintiff] gets hurt so much," his statement that Plaintiff's knee surgery

5    costs would likely push Defendant out of the insurance risk pool eligibility, and

6    mocking Plaintiff's injury, provide a basis for his assessment that he was

7    terminated in part due to his worker's compensation claim.  ECF No. 45 at 7.

8    These statements, Plaintiff argues, taken together with the reality that Defendant

9    had received information in 2020 that it was at risk of being removed from the

10    pool, raises a triable issue of fact to survive summary judgment.  *Id.*; ECF No. 48-

11    13; ECF No. 48-14.  However, in taking this evidence in the light most favorable

12    to him, Plaintiff has not provided a correlation creating an issue for jury

13    consideration.  In assuming all of the information presented by Plaintiff is true, as

14    the Court must on summary judgment, he has not offered an explanation to account

15    for the time between the email exchanges on the record and the date of his

16    separation.  Defendant had been at risk from losing its place in the WASWD pool

17    beginning as early as August 19, 2020 (ECF No. 48-13), and was notified of a 60%

18    increase to its plan in November of 2020 (ECF No. 48-14).  Plaintiff was fired in

19    November 2021.  This discrepancy in time does not support the correlation

20    Plaintiff is attempting to draw, and thus he has not satisfied the first factor of the

ORDER GRANTING IN PART DEFENDANT'S MOTIONS FOR
SUMMARY JUDGMENT AND TO EXCLUDE PLAINTIFF'S EXPERT
WITNESS ~ 10

1 test articulated in *Martin*. Summary judgment is proper.

2 **III.    Violation of the Americans with Disabilities Act and the Washington**

3 **Law Against Discrimination**

4       The Americans with Disabilities Act ("ADA") and the Washington Law

5 Against Discrimination ("WLAD") prohibit an employer from discriminating

6 against an employee based on a disability.  42 U.S.C. § 12112(a); RCW 60.180(3).

7 To prevail on a disability discrimination claim, Plaintiff must establish: (1) he was

8 disabled under the ADA and WLAD, (2) he was a qualified individual (i.e., he

9 could perform the essential functions of the job with or without reasonable

10 accommodation), and (3) his employer discriminated against him because of his

11 disability.  *Poe v. Waste Connections US, Inc.*, 371 F. Supp. 3d 901, 909 (W.D.

12 Wash. 2019) (citing *Dunlap v. Liberty Nat. Products, Inc.*, 878 F.3d 794, 798–99

13 (9th Cir. 2017); *Mikkelsen v. Public Utility District No. 1 of Kittitas County*, 189

14 Wash. 2d 516, 526–527 (2017)).  Washington courts look to federal case law to

15 "guide interpretation of the WLAD."  *Id.* (citation omitted).

16       **a.  Essential Functions of Plaintiff's Job**

17       The second factor of the test questions whether an individual is qualified for

18 his job.  A "qualified individual" is "an individual with a disability who, with or

19 without reasonable accommodation, can perform the essential functions of the

20 employment position that such individual holds or desires."  42 U.S.C. § 12111(8).

ORDER GRANTING IN PART DEFENDANT'S MOTIONS FOR
SUMMARY JUDGMENT AND TO EXCLUDE PLAINTIFF'S EXPERT
WITNESS ~ 11

1   "Essential functions" are job duties that are fundamental to the employment

2   position, rather than marginal functions which may be modified.  *Cripe v. City of*

3   *San Jose*, 261 F.3d 877, 887 (9th Cir.2001).  "If a disabled person cannot perform

4   a job's 'essential functions' (even with a reasonable accommodation), then the

5   ADA's employment protections do not apply."  *Cripe*, 261 F.3d at 884–85.  "If, on

6   the other hand, a person can perform a job's essential functions, and therefore is a

7   qualified individual, then the ADA prohibits discrimination."  *Id*.  While it does

8   not appear that the parties are contesting that Plaintiff was disabled per the first

9   factor, Plaintiff argues that neither lifting 50 pounds nor twisting to open a valve

10  are essential functions of the Utility Field Inspector.  ECF No. 45 at 12.

11      The Ninth Circuit has distinguished between "essential functions" of a job

12  and "qualification standards."  Essential functions are considered basic duties of a

13  position, while qualification standards are "personal and professional attributes"

14  that may include "physical, medical [and] safety" requirements.  *Bates v. United*

15  *Parcel Serv., Inc*., 511 F.3d 974, 990 (9th Cir. 2007) (quoting 29 C.F.R.

16  § 1630.2(n)).  A function may be considered "essential" for a number of reasons,

17  including that the position exists to perform that specific function. 29 C.F.R.

18  § 1630.2(n)(2)(i).  Evidence of an essential function of a job may exist in several

19  places, including: the employer's judgment that the function is essential; a written

20  job description prepared before advertising or interviewing applicants; the amount

ORDER GRANTING IN PART DEFENDANT'S MOTIONS FOR
SUMMARY JUDGMENT AND TO EXCLUDE PLAINTIFF'S EXPERT
WITNESS ~ 12

of time spent on the job function; and the consequences of not requiring the incumbent to perform the function. 29 C.F.R. § 1630.2(n)(3)(i)-(iv). The burden is on the employer to provide evidence of an essential function. *Bates*, 511 F.3d at 991 (internal citations omitted).

Here, Defendant provides the Utility Inspector job posting, which lists as "essential job functions;"

> [P]erform construction inspection; perform quality assurance on construction projects related to the domestic water system, ensure compliance with applicable standards, federal, state, and local regulations; ensure compliance with district standards and details; and ensure contractor's work conforms to project specifications by consistently inspecting the contractor's work . . .

ECF No. 48-15 at 1.

Included within the physical and mental capabilities section, the job listing requires an applicant to, "lift/move up to 50 pounds and occasionally 50-75 pounds," and be able to regularly and frequently twist. *Id.* at 3. Defendant argues that the job of Utility Field Inspector requires bending and twisting in order to turn valves on and off for testing to ensure compliance and can only be performed by a Utility Field Inspector, not a contractor, making it an essential function. ECF No. 49 at 10. While Plaintiff argues that these restrictions were physical qualifications that could have been eliminated, he also admits in his Statement of Facts that he would have been able to complete "the essential functions of his job with a helper."

ORDER GRANTING IN PART DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND TO EXCLUDE PLAINTIFF'S EXPERT WITNESS ~ 13

1    ECF No. 46 at 8.  And though the amount of time expended on valve turning

2    activity is disputed (ECF No. 46 at 22, ECF No. 50 at 9, ¶ 41), the Court is

3    satisfied that the act of doing so is an essential function of the job.  Implicit in the

4    requirements of an inspector is to do the actual inspection, something that could

5    only be performed by an employee of the district, and fundamental to the role.

6    Therefore, as it is conceded that Plaintiff was unable to perform this function

7    without a reasonable accommodation, the Court continues on to consider whether

8    Plaintiff was able to perform the function with a reasonable accommodation,

9    therefore making him a qualified individual.

10                  **b.  Failure to Accommodate in Violation of the Washington Law**

11                  **Against Discrimination and the Americans with Disabilities Act**

12           An employer's failure to provide reasonable accommodation to an employee

13    with a disability is an actionable claim of discrimination under the ADA and

14    WLAD.  *Poe,* 371 F. Supp. 3d at 910 (citing *Dunlap,* 878 F.3d 794; *Davis v.*

15    *Microsoft Corporation,* 149 Wash. 2d 521 (2003)).  To establish a prima facie case

16    for a failure to accommodate claim, Plaintiff must show (1) he is a qualified

17    individual, (2) his employer received adequate notice of his need for an

18    accommodation, and (3) he was denied a reasonable accommodation that was

19    available, and the accommodation did not place an undue hardship on the

20    employer.  *Id.* (citing *Snapp v. United Transportation Union*, 889 F.3d 1088, 1095

ORDER GRANTING IN PART DEFENDANT'S MOTIONS FOR
SUMMARY JUDGMENT AND TO EXCLUDE PLAINTIFF'S EXPERT
WITNESS ~ 14

1   (9th Cir. 2018)).  "To avoid summary judgment, however, [the plaintiff/employee]

2   need only show that an accommodation seems reasonable on its face, i.e.,

3   ordinarily or in the run of cases." *Dark v. Curry County*, 451 F.3d 1078, 1088 (9th

4   Cir. 2006) (internal citation and quotation marks omitted).

5        In the Ninth Circuit, notice to the employer triggers a duty to engage in an

6   "interactive process through which the employer and employee can come to

7   understand the employee's abilities and limitations, the employer's needs for

8   various positions, and a possible middle ground for accommodating the

9   employee." *Snapp*, 889 F. 3d at 1095 (internal quotations omitted).  The

10  "interactive process requires: (1) direct communication between the employer and

11  employee to explore in good faith the possible accommodations; (2) consideration

12  of the employee's request; and (3) offering an accommodation that is reasonable

13  and effective." *U.S. E.E.O.C. v. UPS Supply Chain Solutions,* 620 F.3d 1103,

14  1110 (9th Cir. 2010) (citation and internal quotations omitted).  An employer's

15  duty to accommodate "is a continuing duty that is not exhausted by one effort." *Id.*

16  at 1110–11 (citation and internal quotations omitted).  In other words, when an

17  employer becomes aware that an existing accommodation is no longer working,

18  the employer must continue to engage in the interactive process to determine if

19  another reasonable accommodation exists. *Id*.  In Washington, "an employer's

20  duty to accommodate an employee's condition is limited to those steps reasonably

ORDER GRANTING IN PART DEFENDANT'S MOTIONS FOR
SUMMARY JUDGMENT AND TO EXCLUDE PLAINTIFF'S EXPERT
WITNESS ~ 15

necessary to enable the employee to perform his or her job." *Doe v. Boeing Co.*, 121 Wn.2d 8, 18 (1993).

Plaintiff offers that he could have been accommodated in several ways that went unexplored by Defendant including the acquisition of a truck-mounted valve turner, through the use of an occasional helper, reassignment to a different role, and a medical leave of absence. ECF No. 45 at 16–17. Defendant argues that, despite engaging in the interactive process with Plaintiff, none of the proposed accommodations were reasonable due to either cost, scope, or both. The ADA defines a reasonable accommodation as:

> [J]ob restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9)(B).

Defendant argues that the prolonged use of a helper, or even the addition of a permanent position to assist Plaintiff in lifting and turning, was not a reasonable accommodation as it created an undue hardship. ECF No. 34 at 10–11. Plaintiff argues that he did not need a permanent helper, and that providing occasional assistance qualifies as "job restructuring," per the ADA. ECF No. 45 at 10. The ADA does not require "an employer to exempt an employee from performing

ORDER GRANTING IN PART DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND TO EXCLUDE PLAINTIFF'S EXPERT WITNESS ~ 16

essential functions or to reallocate essential functions to other employees." *Dark,* 451 F.3d at 1089.  As discussed above, an essential function of Plaintiff's job was the opening and closing of valves for inspection.  While true that Defendant was willing to accommodate Plaintiff by providing help on a temporary basis, providing a helper or a permanent employee to assist Plaintiff permanently for an essential job function is not reasonable.  It seems that both parties agree that Defendant's policy provided help for those who needed it at any time, but designating one person to act as a helper for Plaintiff was disruptive to the operation of other jobs performed by Defendant, and not a permanent fix.  *See* ECF No. 35 at 5, ¶¶ 25–26; ECF No. 50 at 9, ¶ 43 ("Mr. Scott testified that he helped Plaintiff daily, that turning a single valve could take up to 10 minutes, that upwards of five valves sometimes needed to be turned, and that he would wait on the job site until after the contractor cut the main line.").  The Court finds that Defendant did engage in the interactive process with respect to the accommodation of a helper, and through the process, found the accommodation unreasonable.  Therefore, summary judgment is proper regarding Plaintiff's claim that an aide for opening water valves was an accommodation that was unexplored by Defendant.

Similarly, summary judgment is proper for Plaintiff's argument that Defendant should have presented or perhaps required that he use medical leave to accommodate surgery for his lower back.  Unpaid medical leave may be

ORDER GRANTING IN PART DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND TO EXCLUDE PLAINTIFF'S EXPERT WITNESS ~ 17

1    considered a reasonable accommodation under the ADA provided it does not

2    impose an undue hardship on the employer.  *Dark*, 451 F.3d at 1090.  However,

3    cases that discuss unpaid medical leave as an accommodation deal with a

4    prospective reason for such leave, or an offer to take the leave made by the

5    employee.  *Id*. (discussing whether an employee's offer to use his 712 hours of

6    accumulated sick leave to resolve his seizures was reasonable); *Nunes v. Wal-Mart*

7    *Stores, Inc.,* 164 F.3d 1243, 1247 (9th Cir. 1999) (finding an issue of fact where an

8    employee sought to extend her existing absence on unpaid medical leave);

9    *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1138 (9th Cir. 2001) (Holding

10   that plaintiff's doctor's statement "I would like to see [Plaintiff] continue to work,

11   but if it is proving to be a major personnel problem, she may have to take some

12   time off until we can get the symptoms better under control" alerted Defendant to

13   the possibility a leave of absence might be necessary to accommodate her

14   disability).  In contrast, unpaid leave can also constitute an adverse employment

15   action, especially where the employee is placed on leave involuntarily.  *Dawson v.*

16   *Akal Sec. Inc*., 660 Fed. Appx. 504, 506 (9th Cir. 2016) (quoting *Steenmeyer v.*

17   *Boeing Co*., 92 F.Supp.3d 1024, 1031 (W.D. Wash. 2015) ("The fact that unpaid

18   leave may be a reasonable accommodation when it is requested 'does not mean

19   that it cannot also be an adverse action, particularly where the employee is placed

20   on unpaid leave involuntarily.' "); *McGinn v. Hawaii Symphony Orchestra*, 727 F.

ORDER GRANTING IN PART DEFENDANT'S MOTIONS FOR
SUMMARY JUDGMENT AND TO EXCLUDE PLAINTIFF'S EXPERT
WITNESS ~ 18

Supp. 3d 915, 937 (D. Haw. 2024); *Zimmerman v. PeaceHealth*, 701 F. Supp. 3d 1099, 1110 (W.D. Wash. 2023). Here, there is nothing on the record to suggest that Plaintiff offered to take leave, and Defendant had no indication that leave would have been helpful in accommodating Plaintiff's disability, as his healthcare provider had ruled out surgery as a solution during this time. ECF No. 36-6 at 7; ECF No. 48-18 at 2; ECF No. 48-21 at 2–3. It appears that in the past, Defendant was accommodating to Plaintiff's procedure as attempts at relief to perform his job function. *See generally* ECF No. 36-4. But based on the information before it, Defendant had no way of knowing whether Plaintiff was able to pursue back surgery, and expectation that it would place Plaintiff on medical leave for some indefinite period is unreasonable. Summary judgment is proper with respect to Plaintiff's argument that unpaid sick leave was a reasonable accommodation that went unexplored by Defendant.

However, questions of fact remain with respect to whether Defendant engaged in the interactive process to determine whether purchasing the truck-mounted valve turner imposed an undue hardship. "The ADA treats the failure to provide a reasonable accommodation as an act of discrimination if the employee is a qualified individual, the employer receives adequate notice, and a reasonable accommodation is available that would not place an undue hardship on the operation of the employer's business." *Snapp*, 889 F.3d at 1095. Failure to engage

in the interactive process is not an independent cause of action, but rather, the inquiry is relevant to whether a reasonable accommodation existed which the employer failed to provide. *Kramer v. Tosco Corp*., 233 Fed. Appx. 593, 596 (9th Cir. 2007).

Here, the question is whether the truck-mounted valve turner was a reasonable accommodation that Defendant explored in good faith. For one, the cost of the equipment and its total impact on Defendant is debated. Defendant posits that the entire cost to the operation was upwards of $80,000, as it would include the exerciser itself, the mounting equipment, and a dedicated truck that would either need to be purchased or removed from the current fleet. ECF No. 35 at 4, ¶ 20. Plaintiff argues that the quote from the valve turner manufacturer E.H. Wachs came in between $27,699 or $28,699, and that Defendant could have utilized $7,500 of L&I accommodation funding toward the equipment. ECF No. 46 at 9, ¶¶ 50–52. The number associated with the cost of the truck has fluctuated in the record. ECF No. 36-3 at 8–9; ECF No. 45 at 4, 16; ECF No. 48-24. Moreover, Plaintiff represents that the valve turner could have been separated from the truck in the event it needed repair, and that he drove his own dedicated truck while employed with Defendant. *Id*. at 12, ¶ 74.

More critically than the issue of cost is the usefulness of the truck-mounted valve turner in the field. Defendant argues that the device was impractical because

1    "the trailer would be hauled over rough terrain of unfinished construction sites . . .

2    Plaintiff's job required him to oversee work done by contractors at construction

3    sites, and many of the valves at these sites could not be accessed by truck."  ECF

4    No. 35 at 5, ¶ 22.  Yet, as Plaintiff points out, no study was done, formally or

5    informally, to determine whether this was the case, nor is there a sense on the

6    record of the rough number of valves that constitutes "many."  ECF No. 46 at 11.

7    Instead, Johnston relied on his own knowledge of the valves in the District and

8    determined that most of them were inaccessible by truck.  ECF No. 36-3 at 8.

9    Moreover, Johnston stated when considering the purchase of a truck-mounted

10    valve turner, he did not find the request "unreasonable," but instead found it

11    impractical given the terrain Plaintiff was required to work in and the fact that, in

12    his view, the device did not alleviate bending and twisting.  ECF No. 36-2 at 6–7.

13    Whether he is a credible source of information is a question for the jury.

14        And finally, Defendant offers that the truck-mounted valve turner was

15    unnecessary because it already possessed a hand-held valve turner that Plaintiff

16    could have utilized while staying within his restrictions as a form of

17    accommodation, but was not aware that he ever elected to use it.  ECF No. 35 at 5,

18    ¶ 23.  Plaintiff argues that, unlike the truck-mounted version, the hand-held valve

19    turner still exerted enough force to pull operators off balance.  ECF No. 46 at 13, ¶

20    79.  The Court finds these conflicting facts surrounding Defendant's engagement

ORDER GRANTING IN PART DEFENDANT'S MOTIONS FOR
SUMMARY JUDGMENT AND TO EXCLUDE PLAINTIFF'S EXPERT
WITNESS ~ 21

1   in the interactive process and whether the purchase of a truck-mounted valve turner

2   was reasonable to be handled best by a jury, and thus summary judgment is denied.

3       Likewise, questions of fact remain surrounding Plaintiff's failure to

4   accommodate theory based on assignment to a new position.  Plaintiff argues that

5   an opening for a Pump Technician and Safety Officer was posted the day after he

6   was terminated, which Defendant could have reassigned to him in lieu of

7   termination.  ECF No. 45 at 17.  Defendant argues that pursuant to the collective

8   bargaining agreement, members of the union had a right to apply for the position

9   first.  ECF No. 34 at 6.  As an inspector, Plaintiff could not be a member of a

10  union, and therefore Defendant could not reassign him to the job without first

11  considering interested members.  *Id*.  However, in arguing for a reasonable

12  accommodation, Plaintiff states that his termination made him eligible to join a

13  union, and thus Defendant had a duty to alert him to the opening given his newly

14  acquired ability to meet the requirements.  ECF No. 45 at 18–19.

15      As part of the interactive process to achieve a reasonable accommodation,

16  the ADA and the WLAD require that the employer take affirmative steps to assist

17  in reassigning an employee, and Washington law has provided some discrete

18  actions an employer can undertake such as sharing information about current

19  openings in the company and assisting the employee with an internal job search.

20  *See McGregor v. Nat'l R.R. Passenger Corp.,* 187 F.3d 1113, 1115 (9th Cir. 1999)

ORDER GRANTING IN PART DEFENDANT'S MOTIONS FOR
SUMMARY JUDGMENT AND TO EXCLUDE PLAINTIFF'S EXPERT
WITNESS ~ 22

1  (discussing reassignment with respect to an employee outside of the collective

2  bargaining agreement in place); *Humphrey*, 239 F.3d at 1138 (internal citation and

3  quotation marks omitted) ("[W]e have held that the duty to accommodate is a

4  continuing duty that is not exhausted by one effort."); *Davis,* 149 Wn.2d at 536–37

5  (collecting cases); *see also Goodman v. Boeing Co*., 127 Wash.2d 401, 408–09

6  (1995) ("[R]easonable accommodation . . . envisions an exchange between

7  employer and employee where each seeks and shares information to achieve the

8  best match between the employee's capabilities and available positions.").

9  Moreover, "in considering reassignment as a reasonable accommodation, an

10  employer must consider not only those contemporaneously available positions but

11  also those that will become available within a reasonable period." *Dark*, 451 F.3d

12  at 1089–90.

13         The Court agrees that wholesale reassigning Plaintiff to the role of pump

14  technician in violation of the existing collective bargaining agreement would have

15  been unreasonable. *Willis v. Pac. Mar. Ass'n*, 236 F.3d 1160, 1165, *opinion

16  amended on denial of reh'g*, 244 F.3d 675 (9th Cir. 2001). And suggesting that

17  Plaintiff join the union in order to be reassigned to the position would also have

18  been improper. 29 U.S.C. § 157; RCW § 41.80.050. However, a question of fact

19  remains regarding whether Defendant should have alerted Plaintiff to the pending

20  opening, particularly in light of the fact that the posting was for union employees

ORDER GRANTING IN PART DEFENDANT'S MOTIONS FOR
SUMMARY JUDGMENT AND TO EXCLUDE PLAINTIFF'S EXPERT
WITNESS ~ 23

as a right of first refusal, meaning that Plaintiff could have been qualified even without joining a union if no other unionized employees applied.  ECF No. 48-2 at 29.  Moreover, the pump technician job was posted on November 9, 2021, the day after Plaintiff was terminated, and remained open until November 16, 2021, potentially leaving time to join the union in light of his termination and submit an application.  ECF No. 48-2 at 32.  Defendant represents that position was previously held by an employee who had been in and out of work while receiving cancer treatment before fully resigning, leaving open a question of when Defendant could have had an idea that the job may become vacant.  *Id*. at 30.  These facts, combined with Plaintiff's supervisor Vince Johnston's testimony surrounding the posting leave triable issues to be considered by a jury in determining whether Defendant engaged in the interactive process in good faith:

> I mean, if Brian would have known that job was up, he could have came to me as much as I could have came to him. But it was never brought to my attention that there was even any interest in that position from Brian. And besides, it was to be filled by a union position. And past practices, and how it's always been, that it was filled by a union position first if they were qualified. And [a union member] was qualified.

ECF No. 48-2 at 32.

Given these outstanding questions, a jury should decide whether Defendant failed to engage in the interactive process with respect to Plaintiff's reassignment by not disclosing the job posting.

ORDER GRANTING IN PART DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND TO EXCLUDE PLAINTIFF'S EXPERT WITNESS ~ 24

### c. Disparate Treatment in Violation of the Washington Law Against Discrimination and the Americans with Disabilities Act

Defendant also moves for summary judgment on Plaintiff's disparate treatment claim. ECF No. 34 at 11. Plaintiff argues that Defendant terminated him because of his disability aided by a view of his limitations as more debilitating than they actually were. ECF No. 1 at 21–22, ¶ 8.2. Courts apply the *McDonnell Douglas* burden-shifting framework to disparate treatment claims. *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1093 (9th Cir. 2001). Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case by showing: (1) he was a member of a protected class, (2) he was qualified for the position, (3) he was subject to an adverse employment action, and (4) he was replaced or treated less favorably than a person outside the protected class. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). A plaintiff may rely on direct or circumstantial evidence to make a prima facie showing. *Snead*, 237 F.3d at 1093. If the plaintiff establishes a prima facie case, the burden shifts to the employer to provide a legitimate non-discriminatory reason for the adverse employment action. *Id*.

For many of the same reasons as discussed above, summary judgment is improper with respect to Plaintiff's disparate treatment claim. Neither party disputes that he was a member of a protected class at the time of his termination, as

ORDER GRANTING IN PART DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND TO EXCLUDE PLAINTIFF'S EXPERT WITNESS ~ 25

Defendant's stated reason for termination was that they were unable to accommodate him.  ECF No. 48-2 at 27.  Questions of fact remain as to whether he could have been qualified for the position with a reasonable accommodation.  There is no debate that Plaintiff was fired on November 8, 2021, an adverse employment action, and that he was replaced by an employee without a disability.  ECF No. 46 at 15, ¶ 90.

In shifting the burden with respect to the second factor, there remains questions of fact and thus summary judgment is improper.  If Plaintiff could have been reasonably accommodated as discussed in the above section, and therefore a qualified individual, then Defendant has not carried its burden of offering a legitimate non-discriminatory reason for termination, as its stated reason for his termination was its inability to find an accommodation.  *See Poe*, 371 F. Supp. 3d at 912 ("The Plaintiff has sufficiently demonstrated that she was qualified for the position in regard to her education, skills and experience.  As above, there are at least issues of fact as to whether she could eventually work full time.").  However, as discussed above, if Plaintiff could not have been reasonably accommodated, then he was no longer qualified for his job, and Defendant need not carry its burden.  As a jury should determine whether Plaintiff was a qualified individual, summary judgment is denied.

ORDER GRANTING IN PART DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND TO EXCLUDE PLAINTIFF'S EXPERT WITNESS ~ 26

1    **IV.    Exclusion of Plaintiff's Expert Witness**

2         Defendant seeks to exclude Plaintiff's expert witness, Allison West, as she

3    reaches legal and speculative conclusions on human resource practices.  ECF No.

4    38 at 1.  Plaintiff assures that Ms. West will not provide testimony at trial on what

5    reasonable accommodation law is or any legal conclusions about whether the law

6    was violated, but argues that her opinion is well supported and will provide the

7    jurors with additional context beyond the scope of general knowledge.  ECF No.

8    40 at 2.

9         Expert testimony is admissible if it meets the standards set forth in Federal

10   Rule of Evidence 702, which provides:

11       A witness who is qualified as an expert by knowledge, skill, experience,
         training, or education may testify in the form of an opinion or otherwise
12       if: (a) the expert's scientific, technical, or other specialized knowledge
         will help the trier of fact to understand the evidence or to determine a
13       fact in issue; (b) the testimony is based on sufficient facts or data; (c)
         the testimony is the product of reliable principles and methods; and (d)
14       the expert has reliably applied the principles and methods to the facts
         of the case.

15

16   Fed. R. Evid. 702.

17        Trial courts perform a "gatekeeping" function to ensure that expert

18   testimony conforms to Rule 702's admissibility requirements.  *Daubert v. Merrell*

19   *Dow Pharmaceuticals*, 509 U.S. 579, 597 (1993).  The party offering the expert

20   testimony bears the burden of showing the testimony is admissible by a

ORDER GRANTING IN PART DEFENDANT'S MOTIONS FOR
SUMMARY JUDGMENT AND TO EXCLUDE PLAINTIFF'S EXPERT
WITNESS ~ 27

1    preponderance of the evidence.  *Id*. at 592 n.10.  Trial judges possess broad latitude

2    to determine the admissibility of expert testimony.  *Kumho Tire Co. v. Carmichael*,

3    526 U.S. 137, 150–53 (1999).  There are four factors a court will consider in

4    determining whether an expert's opinion will assist the trier of fact: "(i) whether the

5    expert is qualified; (ii) whether the subject matter of the testimony is proper for the

6    jury's consideration; (iii) whether the testimony conforms to a generally accepted

7    explanatory theory; and (iv) whether the probative value of the testimony

8    outweighs its prejudicial effect."  *Scott v. Ross*, 140 F.3d 1275, 1285–86 (9th Cir.

9    1998).

10          Trial courts must also ensure expert testimony is reliable.  Reliability is

11    determined by evaluating the following non-exhaustive factors: (1) whether a

12    theory or technique has been tested; (2) whether the theory or technique has been

13    subjected to peer review and publication; (3) the known or potential error rate and

14    the existence and maintenance of standards controlling the theory or technique's

15    operation; and (4) the extent to which a known technique or theory has gained

16    general acceptance within a relevant scientific community.  *Daubert*, 509 U.S. at

17    593–94.  An expert opinion based on "subjective belief or unsupported

18    speculation" is not reliable.  *Id*. at 590

19          Finally, a court must evaluate the relevancy of the testimony.  *See* Fed. R.

20    Evid. 702.  Expert testimony is relevant if it will assist the trier of fact in

ORDER GRANTING IN PART DEFENDANT'S MOTIONS FOR
SUMMARY JUDGMENT AND TO EXCLUDE PLAINTIFF'S EXPERT
WITNESS ~ 28

understanding evidence or determining a fact at issue.  *Daubert*, 509 U.S. at 591.

Conversely, expert opinions that merely tell the jury what conclusion to reach are

inadmissible.  Fed. R. Evid. 704, Advisory Committee Note (1972).

If the testimony is determined to be reliable and relevant, any alleged

weakness in an expert's methodology or conclusion goes to the degree of

credibility to be accorded to the evidence, not to the question of admissibility.  *See*

*Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("When an expert meets the

threshold established by Rule 702 as explained in *Daubert*, the expert may testify

and the jury decides how much weight to give that testimony.").  In sum,

"[v]igorous cross-examination, presentation of contrary evidence, and careful

instruction on the burden of proof are the traditional and appropriate means of

attacking shaky but admissible evidence."  *Daubert*, 509 U.S. at 596.

Ms. West received a Bachelor of Arts from the University of Colorado,

Boulder, and a Juris Doctor from Golden Gate University School of Law in 1994.

ECF No. 39-1 at 2.  She maintained a practice in employment law in San Francisco

until she opened a consulting service in 2000, dealing with workplace

investigations and human resource training.  *Id.*  She has delivered trainings on

employment issues to public and private entities and has been a speaker at human

resources association conferences.  *Id*. at 3.  She holds certificates demonstrating

proficiency in human resource practices and attends continuing education courses.

ORDER GRANTING IN PART DEFENDANT'S MOTIONS FOR
SUMMARY JUDGMENT AND TO EXCLUDE PLAINTIFF'S EXPERT
WITNESS ~ 29

1    *Id.* It appears she has been retained as an expert in 16 matters, all seemingly

2    deriving from disputes in California. ECF No. 42-2. In forming her opinion and

3    amendment, Ms. West reviewed the record as well as a "variety of resources that

4    assist Human Resource (HR) professionals to develop industry standards that are

5    recognized as 'standard,' 'reasonable,' or 'best practices' for the handling of

6    employer-employee issues in all aspects of human resources." ECF No. 39-1 at 4;

7    ECF No. 39-2 at 2–3.

8          As a preliminary matter, Ms. West's opinions surrounding the use of a

9    helper and using sick leave as forms of accommodations are now irrelevant given

10    the Court's findings above. Defendant argues that Ms. West's testimony will offer

11    nothing more than what the jurors may deduce for themselves after the

12    presentation of evidence and is essentially full of legal conclusions. ECF No. 43 at

13    2. Plaintiff offers that Ms. West's testimony at trial will amount to (1) explaining

14    best practices in the reasonable accommodation and interactive process, including

15    its "significance to the reasonable accommodation process and basis for [best

16    practices]" and (2) whether Defendant deviated from those best practices. ECF

17    No. 40 at 7.

18          The admissibility of expert testimony, whether scientific or not, must assist

19    the trier of fact to determine a fact in issue by providing information "beyond the

20    common knowledge." *United States v. Finley*, 301 F.3d 1000, 1008 (9th Cir.

ORDER GRANTING IN PART DEFENDANT'S MOTIONS FOR
SUMMARY JUDGMENT AND TO EXCLUDE PLAINTIFF'S EXPERT
WITNESS ~ 30

2002).  Courts, including those in this District, have found that a layperson may not have a background in standard or best practices in human resources, and therefore found expert testimony appropriate.  *Carlson v. City of Spokane*, 13-CV-0320-TOR, 2014 WL 5334264, at *18 (E.D. Wash. Oct. 20, 2014); *Black v. Grant Cnty. Pub. Util. Dist.*, 2:17-CV-365-RMP, 2021 WL 10863371, at *4 (E.D. Wash. July 16, 2021) (collecting cases); *Maharaj v. California Bank & Tr.*, 288 F.R.D. 458, 460 (E.D. Cal. 2013) (collecting cases).  In the matter at hand, expert testimony surrounding best human resource practices is appropriate as outside of the purview of the jury and therefore helpful.  Given her background in employment law and consulting work, Ms. West appears to be well versed in such standards.

However, the Court agrees with Defendant that some of Ms. West's testimony unduly usurps the role of the Court and the jury, and therefore is excluded.  While "[a]n opinion is not objectionable just because it embraces an ultimate issue," Federal Rule of Evidence 704(a), "an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017).  Though Plaintiff states that such testimony will not come in at trial, Ms. West's report details instruction on Washington State law, (ECF No. 39-1 at 5), findings that appear speculative, including that potential points for accommodation "fell through the cracks," (ECF No. 39-1 at 6), and conclusions left for the jury, such as a finding that "Johnston

did not fully engage in the interactive process regarding [the valve exerciser as an accommodation] as he did not have any discussion with Kniffen about [it]" and "Johnston did not complete the interactive process to determine if there was, in fact, an undue hardship" (ECF No. 39-1 at 7, 9), as well as "it seems logical to assume the decision to post the job was made while Kniffen was still employed" (ECF No. 39-2 at 6). These statements, and others contained in her report and amendment, are not appropriately opined on by an expert witness as they amount to legal conclusions or interfere with the Court's instruction of the law. *Hangarter v. Provident Life & Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004); *United States v. Weitzenhoff*, 35 F.3d 1275, 1287 (9th Cir.1993); *see also Hollen v. Chu*, CV-11-5045-EFS, 2013 WL 5306594, at *5 (E.D. Wash. Sept. 19, 2013) ("Once [the expert's] testimony turns from explaining [human resource] processes in general terms toward concluding that Defendant did not meet the requirements established by law, she invades the province of the jury by providing improper legal conclusions. In a failure-to-accommodate claim, the question of whether or not Defendant properly complied with the accommodation process is the precise question the jury must answer.").

Though Plaintiff argues that the ultimate issue of law is whether an accommodation is reasonable, not whether Defendant failed to engage in the interactive process, the Court disagrees, finding them intertwined. Therefore, to be

admissible at trial, Ms. West must limit her testimony to: (1) what the accommodation and interactive process looks like, including the proper role of administrators; (2) examples of reasonable accommodations; (3) how employers typically engage in the process of accommodating disabled employees; and (4) what steps Defendants took in the accommodation and interactive process.  By limiting her opinion to these issues, Ms. West can assist the jury in deciding the ultimate legal issues, whether Defendant complied with human resource standards without directly testifying to that issue.

//

//

//

//

//

//

//

//

//

//

//

//

ORDER GRANTING IN PART DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND TO EXCLUDE PLAINTIFF'S EXPERT WITNESS ~ 33

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment (ECF No. 34) is

   **GRANTED in part**.

   a. Plaintiff's claim for Wrongful Termination in Violation of Public

      Policy is **DISMISSED with prejudice**.

   b. Plaintiff may not base his Failure to Accommodate claim on a

      theory of an accommodation through the assistance of another

      employee or through Defendant's suggestion of unpaid sick leave.

2. Defendant's Motion to Exclude (ECF No. 38) is **GRANTED in part**.

   a. Plaintiff's Expert Witness, Allison West, is permitted to offer

      testimony at trial within the above parameters.

The District Court Executive is directed to enter this Order and furnish

copies to counsel.

DATED June 27, 2025.



THOMAS O. RICE
United States District Judge

ORDER GRANTING IN PART DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND TO EXCLUDE PLAINTIFF'S EXPERT WITNESS ~ 34